UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                                          Chapter 7

ABSOLUTE MEDICAL, LLC                          Case No. 6:23-bk-03715-LVV
ABSOLUTE MEDICAL SYSTEMS, LLC,          Case No. 6:23-bk-03719-LVV
                                                                (Consolidated Cases)
                      Debtors.
_____/

RICHARD B. WEBBER, as Chapter 7 Trustee
of the Bankruptcy Estates of
Absolute Medical, LLC, and
Absolute Medical Systems, LLC,

            Plaintiff,
v.                                                            Adv. Pro. No.: _____

ALPHATEC SPINE, INC.,

            Defendant.
_____/

## COMPLAINT

Richard B. Webber, as the duly appointed Chapter 7 Trustee (the "Trustee") for the bankruptcy estates of Absolute Medical, LLC ("Absolute Medical") and Absolute Medical Systems, LLC ("AMS," collectively, the "Debtors"), pursuant to 11 U.S.C. Sections 546, 550, 704(a)(1), and Rule 7001(a) of the Federal Rules of Bankruptcy Procedure, and files this Adversary Proceeding against Defendant, Alphatec Spine, Inc. ("Alphatec" or the "Defendant"), and states:

## INTRODUCTION

1.      The Trustee brings this Adversary Proceeding to recover money and property pursuant to Federal Rule of Bankruptcy Procedure 7001, *et seq.* More specifically, the Trustee seeks to enforce Alphatec's obligation to satisfy NuVasive, Inc. n/k/a NuVasive, LLC's

("NuVasive") April 15, 2025, judgment against Absolute Medical, LLC and AMS (as well as its co-defendants Gregory Soufleris) entered in the NuVasive Action in the amount of $19,520,069.00, plus post-judgment interest pursuant to the 2017 Exclusive Sales Agreement (as defined herein).

## THE PARTIES

2.      Plaintiff,  Trustee is the duly appointed Chapter 7 Trustee for the bankruptcy estate of AMS which estate is substantively consolidated with the estate of Absolute Medical, which is pending in the Middle District of Florida Bankruptcy Court and assigned number 6:23-bk-03715-LVV.  Absolute Medical and AMS are each a single-member LLC whose sole member, Gregory Soufleris, is a citizen of the State of Florida.

3.      Defendant, Alphatec, is a California corporation that maintains its principal place of business in Carlsbad, California, and which participates in the highly competitive spine disease industry.  Alphatec's obligation to indemnify Absolute Medical arises from Exhibit F, Section V of the 2017 Dedicated Sales Representative Agreement (as defined below) between it and AMS which is attached as **Exhibit 1**.[1]

## JURISDICTION AND VENUE

4.      This adversary proceeding arises out of and relates to the Bankruptcy Cases.

5.      This adversary proceeding is brought pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure, seeking turnover of estate property pursuant to 1 U.S.C. §§ 541 and 542.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. Sections 157(b)(2)(A), (E), and (O).

---

[1] Contemporaneously with the filing of this Adversary Proceeding, the Chapter 7 Trustee filed a Motion to File, Under Seal, Certain Exhibits to Complaint, requesting the Court authorize the Plaintiff to file certain Exhibits which have been previously marked as confidential, under seal.

7.       Venue is proper in this jurisdiction under 28 U.S.C. Sections 1408 and 1409.

**RELEVANT FACTS**

**A.  The Bankruptcy Cases**

8.       On September 8, 2023 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

9.       On September 11, 2023, the Office of the United States Trustee appointed Richard B. Webber, II, as the Chapter 7 Trustee of the Debtors.

10.      The initial *§341 Meeting of Creditors* [ECF No. 4] ("§341") was scheduled for October 12, 2023, and due to the Debtors' non-appearance at the §341 it was re-scheduled, held November 9, 2023, then continued and concluded on January 4, 2024.

11.      On February 7, 2024, the Court entered in Case No. 23-03715 an Order Granting Amended Motion to Consolidate these Chapter 7 Cases [ECF No. 53].

12.      At the §341, the Chapter 7 Trustee reviewed the Debtor's Schedules and Statement of Financial Affairs [ECF Nos. 11 & 12] and determined that Debtor's estate contains potential assets. Notwithstanding, the Debtors do not have any liquid assets or cash available. The Chapter 7 Trustee issued the Notice of Deadline to file Proofs of Claim in Case No. 23-03719 [ECF No. 38] ("POC"), which provided notice to the creditors and other parties in interest that a POC deadline has been established and all POC must be filed by the deadline date of April 11, 2024.

13.      On February 13, 2024, the Chapter 7 Trustee retained Nicolette Vilmos and the law firm of Berger Singerman LLP ("Berger Singerman"), as special counsel to consult with the Chapter 7 Trustee concerning the administration of this consolidated case, to investigate the acts, conduct, assets, liabilities, and financial condition of the Debtor, and assist the Chapter 7 Trustee in recovery of assets and dealings with litigation [ECF No. 54].

3

14.     Since that time Berger Singerman has been investigating certain potential claims against the Debtors' former principals and other third-party entities. In March and June of 2024, the Trustee issued 2004 exams to the Debtors and Alphatec Holdings, Inc and Alphatec Spine, Inc. as part of his investigation of potential assets and causes of action.

15.     On August 22, 2025, the Bankruptcy Court entered an Order Approving the Employment of Thomas H. Forrester and the law firm of Gullett Sanford Robinson & Martin, PLLC, as Co-Special Litigation Counsel to Richard B. Webber, II, Chapter 7 Trustee, Effective as of February 20, 2025 Trustee [ECF No. 71] employing Gullett Sanford Robinson & Martin, PLLC, as Co-Special Litigation Counsel.

**B. NuVasive Litigation**

16.     Prior to the Petition Date, the Debtors were two of five defendants in an action pending in the United States District Court for the Middle District of Florida, Orlando Division, *NuVasive, Inc.,* ("NuVasive") v. *Absolute Medical, LLC, Absolute Medical Systems, LLC, Greg Soufleris, Dave Hawley, and Ryan Miller* (the "AMS Parties"), Case No. 17-cv-2206-CEM-LHP (the "NuVasive Action").  District Judge Carlos E. Mendoza was assigned to the NuVasive Action.

17.     The claims in the NuVasive Action alleged as follows:

- Count I sought injunctive relief against Absolute Medical;
- Count II sought damages for Absolute Medical's and AMS's breaches of contract, connected to Absolute Medical's violations of a Sales Agreement between NuVasive and Absolute Medical, including lost profits, fees, expenses and pre-judgment interest;
- Count III sought injunctive relief against AMS;
- Count IV sought injunctive relief and damages against certain of the AMS Parties;
- Count V sought damages from certain of the AMS Parties for conversion by those parties of custom surgical equipment created by NuVasive;
- Count VI sought to hold Soufleris, one of the AMS Parties, individually liable under Florida's Revised Limited Liability Company Act;
- Count VII sought to pierce the corporate veil against Soufleris;

4

- Count VIII sought a finding that all AMS Parties violated the Florida Deceptive and Unfair Trade Practices Act; and
- Count IX sought to hold Soufleris liable for tortiously interfering with NuVasive's business relationships with its surgeon-customers.

18.     As set forth in the NuVasive Action, Absolute Medical began distributing medical devices utilized to treat spinal disease that NuVasive designed, manufactured, and marketed throughout the Central Florida Region in or about February 2013.  On or about January 1, 2017, Absolute Medical and NuVasive entered into an Exclusive Sales Representative Agreement, which required Absolute Medical to, without limitation, continue distributing NuVasive's medical devices in the Central Florida Region (the "2017 Exclusive Sales Agreement").

19.     Without limitation, the 2017 Exclusive Sales Agreement:

- required Absolute Medical to exclusively distribute NuVasive's medical devices for a five-year period, followed by a one-year non-compete period;
- did not allow Absolute Medical to terminate without cause (as defined in the Agreement);
- imposed certain restrictive covenants, including non-solicitation and non-competition obligations on Absolute Medical;
- required Absolute Medical to subject its owners, sales representatives, principals, and other affiliates to restrictive covenant agreements that mirrored its own restrictive covenants; and
- required Absolute Medical to enforce those restrictive covenant agreements or pay NuVasive for doing so.

20.     After signing the 2017 Exclusive Sales Agreement, Soufleris decided to separate from NuVasive and have AMS distribute Alphatec's competitive medical devices.  To that end, Soufleris created a business plan for doing so and, in October 2017, flew to Alphatec's headquarters to meet with several of its executives.

21.     The Trustee attaches Soufleris' Business Plan as **Exhibit 2**.  Without limitation, the Business Plan (i) promises that Soufleris, through Absolute Medical, will generate $30-$40,000,000 in revenue for Alphatec in the first two years of their anticipated relationship; and (ii)

requests that Alphatec indemnify him and Absolute Medical against claims brought by NuVasive, ostensibly for their failure to comply with their restrictive covenants.

22.     Ultimately, Soufleris formed AMS to enter into a relationship with Alphatec, presumably as an attempt to avoid the restrictions provided in the 2017 Exclusive Sales Agreement with NuVasive.

23.     Alphatec began working on a contract for AMS to distribute its products the day after Soufleris left Alphatec's headquarters.  By October 23, 2017, AMS's attorney was anticipating reviewing such an agreement.

24.     Alphatec knew of Absolute Medical's and Soufleris' restrictive covenants throughout the parties' negotiations.  Some of Alphatec's executives, including its general counsel, worked at NuVasive in the past and were familiar with NuVasive's agreements with its exclusive distributors, including the restrictive covenants contained in those agreements.  Additionally, a November 25, 2017, email attached as **Exhibit 3**, from Absolute Medical's attorney recited some of those restrictive covenants to Alphatec's general counsel.  More specifically, the email states, in relevant part that:

> c) During the Term and for a period of twelve (12) months thereafter, Representative and Representative Affiliates shall not (i) represent, promote, sell, solicit, or otherwise commercialize (directly or indirectly) any products or services that are, in NuVasive's reasonable judgment, competitive with any of NuVasive's products or services (including the Products) without the prior written consent of NuVasive, (ii) solicit, encourage, or induce, or cause to be solicited, encouraged or induced (directly or indirectly) any Restricted Persons within the Territory, to terminate or adversely modify any business relationship with NuVasive, or not to proceed with, or enter into, any business relationship with NuVasive, nor otherwise interfere with any business relationship between NuVasive, and any Restricted Persons within the Territory, or (iii) solicit or offer to work (directly or indirectly) or hire any of NuVasive's employees, agents or representatives.  The twelve (12) month period during which the restrictions of this Section are applicable after the Term shall toll for any period of time in which Representative is not in compliance herewith.  (d) If after the Effective Date, (i) NuVasive releases a new product or service (including a new Product) that is competitive with a product or service that Representative or a Representative Affiliate at the time represents, promotes,

solicits or otherwise commercializes, or (ii) Representative acquires a new Representative Affiliate, and such Representative Affiliate is engaged in the representation, promotion, sale, solicitation, or commercialization (directly or indirectly) of any products or services that are, in NuVasive's reasonable judgment, competitive with any of NuVasive's products or services (including the Products); then in each case Representative shall cease, and shall cause its Representative Affiliates to cease, such activities with respect to such competitive products within ninety (90) calendar days of the date such new product or service is released in the case of (i), or the acquisition of the new Representative Affiliate in the case of (ii).

25.    Throughout their negotiations, Alphatec, which, at the time, had no sales representatives within Absolute Medical's sales territory, understood that Soufleris intended to generate revenue from the same surgeons and medical facilities in the Central Florida Region that NuVasive entrusted to him and Absolute Medical.

26.    In a November 16, 2017, email chain with Alphatec's then general counsel, Craig Hunsaker, which is attached as **Exhibit 4**, Soufleris states, in relevant part, that "there is more 'juice to squeeze' from the revenue I'll bring over in year one in Central Fl that can't be overlooked." Through Hunsaker, Alphatec responded to this email by increasing the amount of an equity grant extended to Soufleris.

27.    On November 28, 2017, Absolute Medical, via an email from Soufleris to NuVasive, purported to unilaterally terminate the 2017 Exclusive Sales Agreement despite not having any contractual right to do so.

28.    By November 30, 2017, few contractual issues remained to be resolved between Soufleris and Alphatec, but one such issue was indemnification. In an email on the same date, which is attached as **Exhibit 5**, Hunsaker proposed to Soufleris (via his attorney, Chris Mills) that the parties agree to limit Alphatec's indemnification obligation to $500,000. In response, Mills specifically asked for Alphatec to indemnify Soufleris and Absolute Medical for "unlimited damages" awarded against them.

29.     However, a December 1, 2017, email exchange, which is attached as **Exhibit 6**, contains the parties' ultimate agreement as to indemnification limiting any indemnified attorneys' fees to $300,000 but did not cap Alphatec's indemnification obligation as to damages NuVasive might be awarded against Soufleris and/or Absolute Medical.   More specifically, Hunsaker emailed to Mills: "[R]egarding indemnification, let's do this:  mutual (good faith) selection of counsel (i.e., your firm); $300K in attorneys' fees; no cap on damages (if applicable)."  Shortly afterwards, Soufleris (through Mills) agreed to this proposal and declared all outstanding issues resolved.

30.     On December 2, 2017, Alphatec (through Hunsaker) emailed Soufleris the "Final Contract/Execution Copy" of the December 1, 2017, Dedicated Sales Representative Agreement. Pursuant to the parties' agreement, the indemnification provision (the "Indemnification Provision") provides that:

> A.     Restriction Agreement.  Greg Soufleris, the principal of Representative has disclosed to ATEC that he **and his corporate entity Absolute Medical, LLC** (collectively "Restricted Parties") are parties to a non-competition and/or confidentiality covenant with NuVasive, Inc. dated January 1, 2017 under which the Restricted Parties are allegedly precluded from engaging in certain activities in a certain geographic area ("Restriction Agreement").  Mr. Soufleris represents and agrees that he has provided Company with all requested information related to the Restriction Agreement including the opportunity to review the Restriction Agreement ("Disclosure").

> B.     Restriction Agreement Indemnification.  **ATEC agrees that it will defend and indemnify the Restricted Parties in any demand or claim brought by Nuvasive, Inc.** or any of its affiliated entities during the Term or within one year after expiration or termination of same alleging that the Restricted Parties' entry into and performance of its duties under this Agreement constitutes a breach of the Restriction Agreement.  ATEC and Mr. Soufleris will act in good faith and with due legal prudence to mutually agree to the selection of defense counsel.  This obligation shall survive termination of the Agreement for a period of one year after expiration or termination.

> C.     Limits to Restricted Agreement Indemnification.  ATEC's obligation to defend and indemnify the Restricted Parties will be extinguished if:  (1) the Disclosure is found to contain material misstatements of fact or to be materially

8

incomplete; (2) the claim of breach arose, in whole or in part, from Representative's failure to follow the Territory limits in this Agreement and/or other breach of this Agreement; and/or (3) the claim of breach arises, in whole or in part, from Representative's failure to follow ATEC's instruction with respect to compliance with the Restriction Agreement.

D.   <u>Repayment and Maximum</u>.  If the demand or claim is shown by credible evidence or as adjudicated by the court or arbitrator to have arose due one of the conditions in C above then ATEC will invoice Mr. Soufleris for the costs incurred by ATEC in investigating, defending, and/or indemnifying Mr. Soufleris under this provision.  ATEC's maximum liability for attorneys fees, for purposed of Restricted Agreement Indemnification, is $300,000.

(**Exhibit 1** at Exhibit F § V).  In other words, the parties to the Sales Agreement agreed to cap attorneys' fees that Alphatec would cover for any claims brought by NuVasive to $300,000, but they did not cap the damages subject to indemnification.

31.   Soufleris signed the signature page of the December 1, 2017, Dedicated Sales Representative Agreement and returned it and another page to Hunsaker on December 3, 2017. The Trustee attaches this email communication as **<u>Exhibit 7</u>**.

32.   Upon information and belief, the 2017 Dedicated Sales Representative Agreement was fully executed on or about December 1, 2017 (the "2017 Dedicated Sales Representative Agreement") (ATEC/AMSBK000001- ATEC/AMSBK000046)

33.   With Alphatec's encouragement, AMS (through Soufleris and its sales representatives) tortiously interfered with the 2017 Exclusive Sales Agreement  violating the contractual obligations between Absolute Medical and NuVasive.  Without limitation, these contractual violations included solicitations of various surgeons within Absolute Medical's former NuVasive sales territory and AMS's failure to stop its former sales representatives from violating their restrictive covenants in their former NuVasive sales territories.

34.     By mid-December of 2017, AMS converted nearly all (if not all) of the business of NuVasive's leading surgeon customer in the Central Florida Region and, by February 2018, AMS converted nearly all NuVasive's business in that territory.

35.     Alphatec knew about, approved, and encouraged those violations of Soufleris' and Absolute Medical's restrictive covenants described in the preceding paragraph and others.  Indeed, additional evidence of Alphatec's willingness to ignore Absolute Medical's restrictive covenants is found in Alphatec's commitment to compensate Absolute Medical if its sales representatives earned sufficient commissions in the same territories they serviced for NuVasive.

36.     The Absolute Medical representatives' sales territories did not change after Absolute Medical stopped distributing NuVasive's products and began distributing Alphatec's competitive products, and Alphatec had knowledge of this fact at all relevant times.

37.     On December 29, 2017, NuVasive initiated the NuVasive Action.

38.     On or about January 18, 2023, Soufleris and AMS entered into a confidential Settlement Agreement and General Release of All Claims with ATEC, the consideration for which included that ATEC would issue two hundred fifty thousand (250,000) restricted and unregistered shares of common stock in ATEC's parent company, Alphatec Holdings, Inc. ("AHI") (NASDAQ: ATEC) (the "AHI Stock") to GSOUF Trust, LLC (the "Soufleris LLC"), which did not fully vest until February 1, 2024 (the "Settlement Agreement"), after the Petition Date. (ATEC/AMSBK000203-ATEC/AMSBK000213).  Moreover, the Settlement Agreement provided that ATEC would continue to pay reasonable attorneys' fees and/or litigation costs (including legal expenses associated with the Action) for Soufleris, AMS, and other related or affiliated individuals and/or entities through January 31, 2023.  (ATEC/AMSBK000213).

39.     As consideration for AHI's issuance of common stock to the Soufleris LLC, Soufleris, on behalf of himself and AMS, purportedly agreed to withdraw and/or not file any

claims against ATEC and its related entities. (ATEC/AMSBK000205-ATEC/AMSBK000207). The Settlement Agreement also purported to release ATEC and its related entities from any rights or duties arising under its previous agreements with AMS and Absolute Medical. (Id.) AMS received no further consideration for releasing any and all claims it may have had against ATEC at that time.

40.     While not a party to the Settlement Agreement, Absolute Medical is alleged to have released any of its claims against ATEC through Soufleris and AMS, including the Indemnification Provision. The Settlement Agreement does not allege any consideration paid to or received by Absolute Medical as consideration of this release nor does it indicate what authority Soufleris and AMS was granted to release claims of Absolute Medical.

41.     As a result of the Settlement Agreement, AMS was deprived of valuable assets, without any legitimate consideration, that are subject to fraudulent transfer claims by the Trustee.

42.     Alphatec may purport that Absolute Medical also released claims pursuant to the Settlement Agreement, however, Absolute Medical was not a signatory of the Settlement Agreement and received no consideration for any purported release.

43.     On November 16, 2023, NuVasive obtained an *Order Granting Amended Motion for Relief From Automatic Stay to Permit United States District Court to Rule on its Pending Show Cause Order and, if Necessary, Conduct a Show Cause Hearing, Filed by NuVasive, Inc.* [ECF No. 35 in Case No. 23-03715, and ECF No. 33 in Case No. 23-03719 (the "Stay Relief Order")]. The Stay Relief Order allowed the United States District Court to proceed with its findings and conclusions with respect to the nine Counts in the Second Amended Complaint, described above.

44.     On January 17, 2025, Magistrate Judge Leslie Hoffman Price issued her Report and Recommendation that, in sum, found that Absolute Medical, AMS, and Soufleris were jointly

and severally liable for violating the 2017 Exclusive Distributor Agreement and caused NuVasive to incur $19,520,069.00 in damages plus post-judgment interest.

45.    Judge Carlos Mendoza of the Middle District of Florida affirmed Magistrate Judge Price's Report and Recommendation in his March 20, 2025, Order. On March 21, 2025, Judge Mendoza entered a Judgment in a Civil Case memorizing the Report and Recommendation (as amended by his April 15, 2025, Amended Judgment in a Civil Case, (collectively, the "Judgment").

46.    Upon information and belief, Alphatec paid all the legal fees and expenses Soufleris, Absolute Medical, and AMS incurred in the NuVasive Action.  Additionally, upon information and belief, and despite having no contractual obligation to do so, Alphatec paid the legal fees Absolute Medical's sales representatives incurred in the NuVasive Action and the amounts of those sales representatives' settlements with NuVasive.

47.    On November 2, 2023, NuVasive filed a proof of claim against each Debtor in the amount of $19,520,069.00 to memorialize their claim, pursuant to the Judgment, in the Bankruptcy Cases.

48.    Pursuant to the Judgment, the Debtors are in debt to NuVasive in the amount of the Judgment.

49.    Pursuant to the Indemnification Provision, Alphatec is obligated to satisfy the Judgment.

50.    On December 12, 2023, the Trustee sent Alphatec a Notice of Right to Indemnification placing Alphatec on notice of the Trustee's intent to claim full and completed indemnity against Alphatec for the judgment obtained by NuVasive (the "Indemnification Letter"). A copy of the Indemnification Letter is attached hereto as **Exhibit 8.**

51.     On August 15, 2025, counsel for the Trustee sent Alphatec a demand to satisfy the Indemnification Provision and turnover $19,520,069.00, plus post judgment interest, to the Debtors estate by no later than September 3, 2025, pursuant to 11 U.S.C. §542 (the "Demand Letter"). A copy of the Demand Letter is attached hereto as **Exhibit 9**.

52.     Alphatec has refused to comply with its contractual obligation to indemnify Absolute Medical and to pay the Judgment.

## COUNT I – TURNOVER – 11 U.S.C. § 542
### (by AMS against Alphatec)

53.     The Trustee realleges and reincorporates paragraph 1-52 of this Complaint as though fully set forth herein.

54.     This is a count for turnover pursuant to 11 U.S.C. § 542.

55.     The claims giving rise to Alphatec's duty to indemnify AMS and arose prepetition, and are therefore property of the Debtor's estate.

56.     The damages to be paid by Alphatec to AMS, pursuant to the Judgment and Indemnification Provision, are assets of the estate pursuant to 11 U.S.C. § 541.

57.     The Trustee possesses the power under 11 U.S.C. § 542 and § 544 to require turnover of this property of the Bankruptcy Estate. The Trustee demands that Alphatec turn over the funds necessary to satisfy the damages set forth in the Judgment to the Trustee, as these damages are assets of the Bankruptcy Estate.

58.     Alphatec is required to turn over the damages due pursuant to the Judgment as property of the Bankruptcy Estate under 11 U.S.C. § 543.

WHEREFORE, the Trustee requests that this Court enter an order (i) declaring that the funds owed to NuVasive pursuant to the Judgment, in the amount of $19,520,069.00 plus post-judgment interest,  that are possessed by Alphatec, be immediately delivered and turned over to

the Trustee by Alphatec; (ii) awarding interest at the applicable federal statutory rate, and reasonable attorneys' fees and expenses; and (iii) granting such other and further relief as may be just and proper.

**COUNT II – TURNOVER – 11 U.S.C. § 542**
**(By Absolute Medical Against Alphatec)**

59.     The Trustee realleges and reincorporates paragraph 1-52 of this Complaint as though fully set forth herein.

60.     This is a count for turnover pursuant to 11 U.S.C. § 542.

61.     The claims giving rise to Alphatec's duty to indemnify Absolute Medical arose prepetition, and are therefore property of the Debtor's estate.

62.     The damages to be paid by Alphatec to Absolute Medical, pursuant to the Judgment and Indemnification Provision, are assets of the estate pursuant to 11 U.S.C. § 541.

63.     The Trustee possesses the power under 11 U.S.C. § 542 and § 544 to require turnover of this property of the Bankruptcy Estate. The Trustee demands that Alphatec turn over the funds necessary to satisfy the damages set forth in the Judgment to the Trustee, as these damages are assets of the Bankruptcy Estate.

64.     Alphatec is required to turn over the damages due pursuant to the Judgment as property of the Bankruptcy Estate under 11 U.S.C. § 543.

WHEREFORE, the Trustee requests that this Court enter an order (i) declaring that the funds owed to NuVasive pursuant to the Judgment, in the amount of $19,520,069.00 plus post-judgment interest,  that are possessed by Alphatec, be immediately delivered and turned over to the Trustee by Alphatec; (ii) awarding interest at the applicable federal statutory rate, and reasonable attorneys' fees and expenses; and (iii) granting such other and further relief as may be just and proper.

35258703-9

## COUNT III – BREACH OF CONTRACT

65.     The Trustee realleges and reincorporates paragraph 1-52 of this Complaint as though fully set forth herein.

66.     The 2017 Dedicated Sales Representative Agreement is a valid and enforceable contract. Like the rest of that Agreement, its Indemnification Provision is valid and enforceable.

67.     The claims giving rise to Alphatec's duty to indemnify Absolute Medical and Soufleris arose in December 2017. Therefore, the 2017 Dedicated Sales Representative Agreement, and, more specifically, its Indemnification Provision, were in full force and effect no later than when AMS (and others') right(s) to indemnification accrued via NuVasive instituting the NuVasive Action.

68.     Alphatec's failure to comply with the terms of the 2017 Dedicated Sales Representative Agreement, including, without limitation, paying the Judgment against Absolute Medical and AMS constitutes a material breach of the Agreement's Indemnification Provision's unambiguous terms.

69.     As a direct result of Alphatec's refusal to comply with its contractual obligation to indemnify Absolute Medical imposed by the 2017 Dedicated Sales Representative Agreement, Absolute Medical (including its bankruptcy estate) incurred damages of no less than $19,520,069.00 plus post-judgment interest.

WHEREFORE, the Trustee respectfully requests that this Court: (i) award the bankruptcy estate for AMS damages for Alphatec's failure to indemnify it in accordance with the Judgment of $19,520,069.00, plus post-judgment interest; (ii) award the bankruptcy estate for AMS  its reasonable costs, including attorneys' fees, that it incurs in enforcing the Judgment against Defendant Alphatec; and (iii) grant any other further and general relief the Court deems necessary, just, and proper.

## COUNT IV – AVOIDANCE OF FRAUDULENT TRANSFERS
## PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE
## AND SECTION 726.105(1)(a) OF THE FLORIDA STATUTES

70.    The Trustee realleges and reincorporates paragraph 1-52 of this Complaint as though fully set forth herein.

71.    The Settlement Agreement dated January 18, 2023, entered into between Defendant, Soufleris and AMS was made within four years prior to the Petition Date and could not reasonably have been discovered by the Trustee until documents were recently provided to the Trustee pursuant to a 2004 Examination [ECF. No. 66] directed at Alphatec.

72.    The Settlement Agreement constituted the transfer of an interest of AMS' Estate in property.

73.    The Settlement Agreement was made after litigation was commenced against AMS and Absolute Medical, and with the actual intent to hinder, delay, or defraud a creditor of the Debtors.

74.    In determining the actual intent to hinder, delay, or defraud a creditor of the Debtors, consideration should be given to the following factors, as set forth in the Florida Statutes:

a.    the Transfer was concealed from creditors of AMS, as the Settlement Agreement was not disclosed to the Trustee until the 2004 Exam was issued by the Chapter 7 Trustee and the Settlement Agreement not included in the Debtors' sworn schedule of assets filed in these proceedings;

b.    before the Settlement Agreement was made, AMS had been sued by NuVasive;

c.    the Settlement Agreement represents substantially all of AMS's assets;

d.    AMS did not receive consideration in return of their releases in the Settlement Agreement;

16

35258703-9

e.      The Settlement Agreement was also concealed from the Trustee and not included in AMS' sworn schedules;

f.      the Settlement Agreement was made after AMS became insolvent and, in fact, was effectuated during the pendency of these proceedings without the Trustee's knowledge; and

g.      the transfer of stock occurred post-petition and shortly after AMS incurred a substantial debt, as it occurred months after Judge Mendoza entered default judgment against AMS (and the other defendants in that action) in the Action.

75.     The Settlement Agreement may be avoided under Section 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statutes.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a Judgment:

a.      Declaring the Settlement Agreement to have been fraudulent pursuant to Section 726.105(1)(a) of the Florida Statutes;

b.      Avoiding the Settlement Agreement as a fraudulent transfer in violation of Section 726.105(1)(a) of the Florida Statutes and Section 544 of the Bankruptcy Code;

c.      Requiring the invalidity of the Settlement Agreement; and

d.      Requiring Alphatec turn over the damages due pursuant to the Judgment as property of the Bankruptcy Estate.

e.      Granting such other and further relief as deemed just and proper.

**COUNT V – AVOIDANCE OF FRAUDULENT TRANSFERS
PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE
AND SECTION 726.105(1)(b) OF THE FLORIDA STATUTES**

76.     The Trustee realleges and reincorporates paragraph 1-52 of this Complaint as though fully set forth herein.

17

77.     AMS received less than reasonably equivalent value in exchange for the Settlement Agreement directed and implemented by Defendant, and

a. AMS was engaged or was about to engage in business or a transaction for which the remaining assets of AMS were unreasonably small in relation to its business or transaction; or

b. AMS intended to incur, or believed it would incur, debts that would be beyond the Debtors' ability to pay as they became due.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a Judgment:

a.     Declaring the Settlement Agreement to have been a fraudulent transfer pursuant to Section 726.105(1)(b) of the Florida Statutes;

b.     Avoiding the Settlement Agreement as a fraudulent transfer under Section 544 of the Bankruptcy Code and in violation of Section 726.105(1)(b) of the Florida Statutes;

c.     Requiring the invalidity of the Settlement Agreement; and

d.     Requiring Alphatec turn over the damages due pursuant to the Judgment as property of the Bankruptcy Estate.

e.     Granting such other and further relief as deemed just and proper.

**COUNT VI – AVOIDANCE OF FRAUDULENT TRANSFERS
PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE
AND SECTION 726.105(1)(a) OF THE FLORIDA STATUTES**

78.     The Trustee realleges and reincorporates paragraph 1-52 of this Complaint as though fully set forth herein.

79.     The Agreement dated January 18, 2023, entered into between Defendant, Soufleris and AMS was made within four years prior to the Petition Date and could not reasonably have

been discovered by the Trustee until documents were recently provided to the Trustee pursuant to a 2004 Examination (ECF. No. 66) directed at Alphatec.

80.    The Settlement Agreement constituted the transfer of an interest of Absolute Medical in property as the Settlement Agreement specifically provided for the indemnification of Claims brought by Nuvasive against Absolute Medical.

81.    The Settlement Agreement was made after litigation was commenced against Absolute Medical, and with the actual intent to hinder, delay, or defraud a creditor of Absolute Medical.

82.    In determining the actual intent to hinder, delay, or defraud a creditor of Absolute Medical, consideration should be given to the following factors, as set forth in the Florida Statutes:

a.  the Transfer was concealed from creditors of Absolute Medical, as the Settlement Agreement was not disclosed to the Trustee until the 2004 Exam was issued by the Chapter 7 Trustee and the Settlement Agreement not included in the Debtors' sworn schedule of assets filed in these proceedings;

b.  before the Settlement Agreement was made, AMS Debtor and Absolute Medical had been sued by NuVasive;

c.  the Settlement Agreement represents substantially all of AMS and Absolute Medical's assets;

d.  Absolute Medical did not receive consideration in return of their releases in the Settlement Agreement;

e.  Absolute Medical was not a signatory to the Settlement Agreement;

f.  The Settlement Agreement was also concealed from the Trustee and not included in the Debtors' sworn schedules;

g.   the Settlement Agreement was made after AMS and Absolute Medical became

insolvent and, in fact, was effectuated during the pendency of these proceedings

without the Trustee's knowledge; and

h.   the transfer of stock to the Soufleris LLC occurred post-petition and shortly

after Absolute Medical incurred a substantial debt, as it occurred months after

Judge Mendoza entered default judgment against AMS (and the other

defendants in that action) in the Action.

83.   The Settlement Agreement may be avoided under Section 544 of the Bankruptcy

Code and Section 726.105(1)(a) of the Florida Statutes.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a Judgment:

a.   Declaring the Settlement Agreement to have been fraudulent pursuant to

Section 726.105(1)(a) of the Florida Statutes;

b.   Avoiding the Settlement Agreement as a fraudulent transfer in violation of

Section 726.105(1)(a) of the Florida Statutes and Section 544 of the Bankruptcy Code;

c.   Requiring the invalidity of the Settlement Agreement; and

d.   Requiring Alphatec turn over the damages due pursuant to the Judgment as

property of the Bankruptcy Estate.

e.   Granting such other and further relief as deemed just and proper.

### COUNT VII – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE AND SECTION 726.105(1)(b) OF THE FLORIDA STATUTES

84.   The Trustee realleges and reincorporates paragraph 1-52 of this Complaint as

though fully set forth herein.

85.   Absolute Medical received less than reasonably equivalent value in exchange for

the Settlement Agreement directed and implemented by Defendant, and

a. Absolute Medical was engaged or was about to engage in business or a transaction for which the remaining assets of Absolute Medical were unreasonably small in relation to its business or transaction; or

b. Absolute Medical intended to incur, or believed it would incur, debts that would be beyond the Debtor's ability to pay as they became due.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a Judgment:

a.      Declaring the Settlement Agreement to have been a fraudulent transfer pursuant to Section 726.105(1)(b) of the Florida Statutes;

b.      Avoiding the Settlement Agreement as a fraudulent transfer under Section 544 of the Bankruptcy Code and in violation of Section 726.105(1)(b) of the Florida Statutes;

c.      Requiring the invalidity of the Settlement Agreement; and

d.      Requiring Alphatec turn over the damages due pursuant to the Judgment as property of the Bankruptcy Estate.

e.      Granting such other and further relief as deemed just and proper.

## COUNT VIII
## COMMON LAW INDEMNIFICATION
### (Alternative Count)

86.     The Trustee realleges and reincorporates paragraph 1-52 of this Complaint as though fully set forth herein.

87.     This is an action for common law indemnification.

88.     Absolute Medical was not a signatory to the Settlement Agreement and was not a party to the 2017 Dedicated Sales Representative Agreement.

35258703-9

89.     Absolute Medical incurred liabilities due to claims brought by NuVasive, which were directly related to the actions and agreements involving AMS, Soufleris and Alphatec as set forth above and was contemplated in the 2017 Dedicated Sales Representative Agreement.

90.     Absolute Medical's exposure to the Judgment resulted solely from the actions of AMS and Alphatec under the 2017 Dedicated Sales Representative Agreement, such liability was percolating at the time the Settlement Agreement was entered into but did not come into fruition until entry of the Judgment.

91.     Absolute Medical incurred significant damages in being liable for the Judgment.

92.     Absolute Medical's liability under the Judgment was solely because of some vicarious, constructive, derivative, or technical liability, of Alphatec, who should bear the costs because it was their wrongdoing for which the former is held liable.

93.     Alphatec has a duty and obligation to indemnify, defend, and hold Absolute Medical harmless

**WHEREFORE**, Absolute Medical, requests that this Court enter Judgment against Alphatec, for any and all amounts owed pursuant to the NuVasive Judgment and such other and further relief as this Court may deem proper.

## RESERVATION OF RIGHTS

94.     The Trustee reserves the right to amend this Complaint upon completion of his investigation and discovery, to assert additional claims for relief against Alphatec as may be

justified under applicable law.

Dated:  September 5, 2025.

> BERGER SINGERMAN LLP
> *Special Counsel for Chapter 7 Trustee*
> 111 N. Magnolia Avenue, Suite 1450
> Orlando, FL 32801
> Telephone:  (407) 743-7900
> Facsimile:  (407) 545-5140
>
> By: /s/ *Nicolette C. Vilmos*
>        Nicolette C. Vilmos
>        Florida Bar No.: 469051
>        nvilmos@bergersingerman.com
>        Michael J. Niles
>        Florida Bar No.: 107203
>        mniles@bergersingerman.com
>
> By: /s/ *Thomas H. Forrester*
>        Thomas H. Forrester *(pro hac vice)*
>        Christopher W. Cardwell, Esq. (*pro hac vice*)
>        M. Thomas McFarland, Esq. (*pro hac vice*)
>        GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
>        *Special Co-Counsel for Chapter 7 Trustee*
>        150 Third Avenue South, Suite 1700
>        Nashville, TN 37201
>        Telephone: (615) 244-4994
>        Facsimile: (615) 256-6339
>        tforrester@gsrm.com
>        ccardwell@gsrm.com
>        tmcfarland@gsrm.com
>        tnoble@gsrm.com
>
>        *Filer's Attestation: Pursuant to Local Rule 1001-2(g)(3) regarding signatures, Nicolette C. Vilmos attests that concurrence in the filing of this paper has been obtained*

35258703-9